In the Matter of COSMOPOLITAN MUTUAL CASUALTY COMPANY OF NEW YORK, Respondent, against MONARCH CONCRETE CORPORATION et al., Judgment Debtors; PSATY & FUHRMAN, INC., Third-Party Appellant, and HYMAN GREENBERG, Individually and as Secretary of Psaty & Fuhrman, Inc., Appellant.

First Department, July 1, 1958.

*David Morgulas* of counsel (*M. Carl Levine, Morgulas & Foreman,* attorneys), for appellant.

*Seymour Karpas* of counsel (*Marcus Scherl,* attorney), for respondent.

*Per Curiam.* In this supplementary proceeding, Psaty & Fuhrman, Inc., a third party, and its secretary, Hyman Greenberg, appeal from a Special Term order adjudging the third party guilty of contempt and imposing a fine of $4,410.39. The order followed the confirmation of the report of an Official Referee who found the third party guilty of contempt after a hearing upon the issues.

On June 1, 1956, the creditor obtained a judgment against the debtor and an execution issued thereon was returned unsatisfied. On June 11, 1956, a third-party subpœna in supplementary proceedings was served upon Hyman Greenberg, an officer of Psaty. The subpœna contained an order, pursuant to section 781 of the Civil Practice Act restraining the " transfer  *  *  * of  *  *  * any property belonging to the judgment-debtor, or to which he may be entitled or which may thereafter  *  *  * become due to such judgment-debtor." About two weeks later, in lieu of appearance for examination, the third party filed an affidavit with the creditor, substantially stating that the debtor had previously received all moneys due to it and that PSATY had advanced to the debtor $97,099.58 in excess thereof, which the debtor had agreed to repay on demand. Thereafter, in October, the debtor certified by affidavit that, after the service of the subpœna, the third party paid material bills owed by Monarch and paid sums approximating $30,000 to the debtor, to be used to meet payrolls. As a result, by order to show cause dated November 9, 1956, the creditor moved to punish Psaty for contempt. The reference and the determination noted above followed.

On October 8, 1954, Psaty entered into a contract with the debtor, who was to perform the concrete work in the erection of

an incinerator by Psaty as general contractor. By its terms, payments were to be made to Monarch by Psaty during the course of construction. In January, 1956, Monarch declared it could not fulfill its obligation under the contract. Psaty then had alternative choices. It had the right to discharge the subcontractor and finish the job itself or it could have engaged another to complete the work. It chose, however, to continue with Monarch. It is a reasonable inference that the course undertaken by Psaty was to its advantage as compared with the other means available to it.

In continuing with Monarch, Psaty again had the option to proceed in one or more ways. For example, it might have undertaken to pay Monarch's mechanics, laborers and material suppliers itself. By arrangement, however, Monarch continued to supply labor and material. Psaty issued checks to Monarch, allegedly for the purpose of paying for these items. The proof, however, does not indisputably establish that all the funds were thus used. Psaty actually made 19 payments approximating $40,000 directly to Monarch after the subpœna was served upon it, and in addition, paid some $15,000 to materialmen for materials delivered to Monarch.

The Referee found that these funds were '' a use and transfer * * * by the third-party of * * * the property of the debtor, and the payment by the third-party of debts contracted by the debtor for materials and supplies ordered and used by it in the performance of its contract.'' Special Term confirmed this finding. The determination finds support in the record, especially since by a letter dated January 10, 1956, when Monarch originally defaulted, Psaty was given the sole discretion to pay such bills as it chose to satisfy and to charge the payments to the debtor's account. The agreement also provided that in the event that the total exceeded the contract price, the excess was to be repaid by the debtor.

It is not without significance that the arrangement made by Psaty and Monarch was not disclosed to Cosmopolitan, the creditor, after the subpœna containing the restraint was served. Instead, Psaty, as already indicated, advised the creditor, under oath, that no money was due to Monarch and that it had been overpaid in a substantial amount. The creditor had the right to rely upon the sworn statement. It would be inequitable to hold that a creditor relied upon such verified proof at its peril. To hold otherwise would, in effect, place a premium upon concealment and would virtually destroy the worth-while practice of accepting an affidavit in lieu of a full-scale examination.

A party who cavalierly chooses to ignore an injunctive order, regular on its face, must accept the consequences if the order is sustained (*Matter of Sverd* v. *Mostel*, 283 App. Div. 128). Under the circumstances here, the third party had the burden of establishing that it did not violate the order and that payments made were not funds belonging to or owed to the debtor. Psaty had the right under the Civil Practice Act, and was not deprived of the opportunity, to apply to the court for a release of the restraint, or to make full disclosure of its proposed action and obtain the consent of the creditor. Moreover, it is not disputed that Psaty paid approximately $4,700 to creditors of Monarch for debts other than for material or labor.

As Special Term indicated, to permit a debtor and a third party, by arrangement, to favor selected creditors creates preferential treatment intolerable as a matter of public policy.

We cannot say, upon the record before us, that Psaty sustained the burden of establishing that the funds it disbursed after the order was served were not funds due or to become due to the debtor.

In the order, from which Hyman Greenberg individually appeals, Special Term directed that, in the event Psaty fails to pay the fine, Greenberg may be apprehended, arrested and committed to jail by the Sheriff, upon proof of personal service of the order upon him. The order, however, contains no finding that Greenberg was guilty of contempt, or that any action on his part, after the service of the subpœna with its restraining provisions, impaired, impeded, or prejudiced the rights of the creditor. Nor did the Referee make such specific findings with respect to Greenberg. In the absence of the appropriate findings by Special Term, the order with respect to Greenberg cannot be sustained (see *Matter of Rose Co.* v. *Tompkins & Bevers*, 248 App. Div. 605).

Under the circumstances, the order should be modified, on the law and the facts, to strike the final decretal paragraph therein, and as modified otherwise affirmed, with costs to the respondent.

RABIN, J. (dissenting). I dissent and vote to reverse the order adjudging the third-party appellant (herein called Psaty) guilty of contempt based upon a finding that subsequent to the service of a third-party subpœna upon it Psaty made payments to or on behalf of the judgment debtor (herein called Monarch).

Psaty was the general contractor for the City of New York on the construction of an incinerator plant and entered into a subcontract with Monarch for the performance of the concrete work. The subcontract called for monthly payments of 90% of the value of the work completed in the preceding month. In

January of 1956 Monarch advised Psaty that it was short of funds necessary to continue its work. Thereupon, and on the 10th day of January, 1956, Monarch wrote to Psaty offering an arrangement whereby the work might be continued. This arrangement contemplated advances by Psaty to Monarch in order to make that possible. The letter arrangement provided that Psaty would "make such advance payments to us (Monarch) as you may see fit in your sole discretion, or you may pay for our account such of our obligations or unpaid bills as you, in your sole discretion may determine, and charge the same against the payments, if any, which might otherwise next become due to us in the normal course. * * * We would also like it understood that if the total payments made and to be made by you to us for our account exceeds the amount of our subcontract price, * * * the excess, if any, will be repaid by us to you on your demand."

In pursuance of this arrangement, which was acceptable to it, Psaty thereafter made advances to meet Monarch's payroll and material bills.

On June 11, 1956 the judgment creditor (Cosmopolitan), the respondent herein, having obtained a judgment ($4,746.90) against Monarch, served a third-party subpœna on Psaty. The subpœna contained notice of the restraint provision of section 781 of the Civil Practice Act against the transfer of property belonging to the debtor. By that time, according to the facts before us, Psaty had overpaid Monarch in the sum of $97,099.58 on its subcontract and Monarch was indebted to Psaty in that sum. In lieu of an appearance in court Psaty submitted the affidavit of its secretary, Hyman Greenberg, so stating. This statement was not challenged by the creditor nor at any time was there evidence offered to contradict the facts set forth in the affidavit. True, there is a claim made by respondent that the letter indicated a liability from Psaty to Monarch as the result of alleged delays which it is claimed occurred through no fault of the subcontractor. But there is nothing in this record to establish liability and there is no proof whatever to show that there was anything due Monarch as the result of such claim.

Pursuant to the letter of January 10, 1956, and after the service of the third-party subpœna Psaty advanced additional moneys for the express purpose of paying for labor and materials to further the work on the job. It is stated and not denied that the moneys advanced were less in amount than was required for the payment of such labor and materials, Monarch apparently paying the difference. In addition to payments for

labor and materials, a sum in the neighborhood of $5,000 went to pay for insurance and a telephone bill amounting to less than $50.

It is because of the various advances made after the service of the subpœna that Psaty was found guilty of a willful contempt and fined the sum of $4,410.39.

In my opinion that holding can be sustained only if it should be found that Psaty, after the service of the subpœna, disposed of property belonging to Monarch, since section 781 of the Civil Practice Act forbids a transfer by a third party " *who has in his or its possession property or moneys belonging to the judgment debtor or who is indebted to the judgment debtor* ". (Italics supplied.) However, there is nothing in the record to establish that when it advanced the money to pay Monarch's obligations, Psaty had in its possession property belonging to Monarch or that Psaty was indebted to Monarch. The undisputed facts show the very contrary, for at no time when advances were made by Psaty subsequent to the service of the subpœna was there anything due to Monarch.

Monarch had no right to collect or even demand anything from the third party except as Psaty was willing to make payments. There was nothing due to Monarch at any time between the service of the subpœna and the contempt finding. Monarch could not have compelled Psaty to make any payment to it and consequently the judgment creditor was in no better position to do so for it stands on the same footing as its debtor (*Matter of Gombert,* 285 App. Div. 1053).

It is urged however that as a result of the letter agreement permitting Psaty to make advances as it saw fit, there came into existence a contractual relationship between Monarch and Psaty and that under such arrangement a judgment creditor has the right to attach. That would be true if as a result of such contractual arrangement something could become due to the judgment debtor. As heretofore indicated it appears from the facts established that at no time did money become due to the judgment debtor and consequently the continuing arrangement could not be a basis for a claim by Monarch.

It is also claimed that the third party should be held liable because some of the money which was advanced for material and labor was not paid directly by Psaty but was advanced to Monarch and deposited in the latter's bank. While conceivably the creditor might have been able to attach this money while in the debtor's bank, the fact remains that when Psaty advanced the money it was not property belonging to Monarch. At best the advance constituted a loan and there is nothing prohibiting

the making of such a loan. As indicated, the proceeds of that loan might have been subject to attachment when placed in the debtor's bank account. But at the time the loan was made there was nothing due from Psaty to Monarch and consequently there was no violation of section 781 of the Civil Practice Act.

Furthermore, before Psaty could be fined the amount of the judgment it would have to be shown that the judgment creditor was prejudiced by the acts of the third party and that those acts prevented it from collecting its judgment (*Matter of Short v. B. R. T. Corp.*, 279 App. Div. 631). Inasmuch as Psaty was not obliged to make payments and was not indebted to Monarch it is difficult to see how, because of its acts, the judgment creditor was prevented from collecting its judgment. Had the creditor stepped in and objected when the first advance was made, of certainty, the work would have stopped and there would have been no further advances beyond that point. It follows that the creditor was not prejudiced in the collection of its judgment. Nevertheless, and despite the fact that the judgment creditor would not have been able to collect anything from the third party (since the judgment debtor could not have collected anything) the order appealed from, if affirmed, will enable the creditor to collect its judgment in full.

Moreover, it seems that the judgment creditor rather than accepting, without challenge, the affidavit submitted by Psaty following the service of the subpœna, should have examined Psaty as it had the right to do. It could thus have explored the arrangement between Psaty and Monarch and proceeded to enforce whatever rights it considered it had in the circumstances. Psaty should not be penalized for failure of the judgment creditor to follow through on its subpœna, assuming it had rights which could be enforced. It is apparent that for all intents and purposes the third-party examination was considered closed upon the acceptance of the Greenberg affidavit without objection, and that the third party apparently was led to so consider it. In this situation the creditor should not be heard to complain of advances (which I believe were not improper) made by Psaty thereafter.

In short, my view is that the facts in this case do not show that there was any money due or to become due to the judgment creditor or that any property of the judgment debtor was disposed of by the third party; also that there was no showing on the part of the judgment creditor that it was prejudiced by the acts of the third party and that it was prevented by such acts from collecting its judgment. Consequently, the third-party appellant should not have been held in contempt.

The order should be reversed and the motion to punish the appellant herein for contempt should be denied on the law, with costs to the appellant.

BOTEIN, P. J., BREITEL, M. M. FRANK and McNALLY, JJ., concur in *Per Curiam* opinion; RABIN, J., dissents in opinion.

Order modified on the law and on the facts, to strike the final decretal paragraph therein, and as so modified is otherwise affirmed, with costs to the respondent.

Settle order.